IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-10466 |
| | ) | |
| MC PRECAST, INC. | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | JUDGE DRAKE |
| | ) | |

**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION OF HAYS FINANCIAL CONSULTING, LLC AS
FINANCIAL ADVISORS TO THE DEBTOR**

COMES NOW, MC Precast, Inc., Debtor and Debtor-in-Possession in the above-styled case ("Debtor"), by and through the undersigned counsel, and respectfully makes and files this Application for Entry of an Order Authorizing the Retention of Hays Financial consulting, LLC ("Hays") as Financial Advisors to the Debtor, pursuant to 11 U.S.C. §327 and Bankruptcy Rules 2014 and 5002. The grounds for this Application are as follows:

1.

On February 8, 2010 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.

Debtor continues in the operation and management of its business as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.

Neither an Official Committee of Unsecured Creditors nor an examiner has been appointed in this bankruptcy case.

4.

The Debtor requires the services of a financial advisor to assist them with the following duties:

(a) drafting and completion of financial and operational documents, such as schedules and statements of financial affairs and monthly operating reports as required by the bankruptcy court;

(b) assist the Debtors with all aspects of addressing vendor issues and needs;

(c) assist the Debtors with all aspects of its financial forecasting and reporting, and interact with all interested parties, especially associated with the Debtor's budget;

(d) provide advice and assist the Debtors with communication efforts to its employees, vendors, customers, and other stakeholders regarding the Debtor's bankruptcy;

(e) provide wind-down services post-sale, as needed and requested by the Debtors;

(f) Provide financial, operational, strategic, and bankruptcy-related advice as requested by the Debtors;

(g) Assist the Debtor and/or its other professionals with the review and negotiation of offers of interest related to the role of the Debtor's businesses and the anticipated 363 sale process;

(h) Assist the Debtor and/or its other professionals with all other matters as requested and directed by the Debtors;

(i) Provide expert testimony, as required; and

(j) Perform other services incidental and necessary to the Debtor's performance of their duties in these Chapter 11 cases.

5.

The Debtor seeks to enter into an engagement agreement (the "Agreement") with Hays, a copy of which is attached as Exhibit "1" to the Hays Affidavit.

6.

Hays is well qualified to provide the required services and has had substantial experience in providing consulting services to, among other clients, troubled companies, secured creditors and creditors' committees.

7.

To the best of the Debtor's knowledge: (a) Hays represents no interest adverse to the Debtor in the matters upon which Hays is to be engaged for the Debtor; (b) Hays has had no connection with the Debtor, its creditors or any party in interest, or their respective attorneys and accountants; and (c) Hays's appointment will be in the best interest of the Debtor.

8.

The Debtor desires to employ Hays and pay it in accordance with the terms of the Agreement.

9.

Attached hereto as Exhibit "A" and incorporated herein by reference is an Affidavit of an authorized representative of Hays offered in support of this Application.

WHEREFORE, the Debtor prays that it be authorized to enter into the Agreement and employ Hays as a financial advisor as set out above.

This **16th** day of February, 2010.

|  |  |
|---|---|
| | SCROGGINS & WILLIAMSON |
| | */s/ John T. Sanders IV* |
| 1500 Candler Building | J. ROBERT WILLIAMSON |
| 127 Peachtree Street, NE | Georgia Bar No. 765214 |
| Atlanta, GA 30303 | JOHN T. SANDERS, IV |
| (404) 893-3880 | Georgia Bar No. 625705 |
| rwilliamson@swlawfirm.com | ASHLEY REYNOLDS RAY |
| jsanders@swlawfirm.com | Georgia Bar No. 601559 |
| aray@swlawfirm.com | Counsel for the Debtor |

- 4 -

## CERTIFICATE OF SERVICE

This is to certify that on this date I served a true and correct copy of the within and foregoing **Application for Entry of an Order Authorizing the Retention of Hays Financial consulting, LLC as Financial Advisors to the Debtor** by causing same to be deposited in the United States Mail with adequate postage affixed thereon and addressed to the following persons:

> Office of the United States Trustee
> 362 U.S. Courthouse
> 75 Spring Street, SW
> Atlanta, GA 30303

This 16th day of February, 2010.

|  |  |
|---|---|
|  | SCROGGINS & WILLIAMSON |
|  | /s/ John T. Sanders, IV |
| 1500 Candler Building | J. ROBERT WILLIAMSON |
| 127 Peachtree Street, NE | Georgia Bar No. 765214 |
| Atlanta, GA 30303 | JOHN T. SANDERS, IV |
| (404) 893-3880 | Georgia Bar No. 625705 |
| rwilliamson@swlawfirm.com | ASHLEY REYNOLDS RAY |
| jsanders@swlawfirm.com | Georgia Bar No. 601559 |
| aray@swlawfirm.com | Counsel for the Debtor |

# Exhibit A

Case 10-10466-whd    Doc 22    Filed 02/16/10    Entered 02/16/10 17:20:20    Desc Main
            Document      Page 6 of 15

*ATL 16882581 v4*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

------------------------------------------------------------x
In re:                                            : Chapter 11
                                                  :
MC PRECAST, INC.                                  : Case No. 10-10466
                                                  :
                        Debtors.                  :
------------------------------------------------------------x

**AFFIDAVIT OF CHRISTOPHER J. TIERNEY IN SUPPORT OF THE
ENTRY OF AN ORDER AUTHORIZING THE RETENTION OF
HAYS FINANCIAL CONSULTING, LLC AS FINANCIAL ADVISORS
EFFECTIVE AS OF PETITION DATE**

Christopher J. Tierney of full age, and being duly sworn according to law, upon his oath deposes and says:

1. I am a Managing Director with Hays Financial Consulting, LLC ("**HFC**") which maintains an office at 3343 Peachtree Road, NE, Suite 200, Atlanta, Georgia, 30312 and in other cities. I submit this affidavit pursuant to 11 U.S.C. §§ 327(a) and Fed. R. Bank. P. 2014 and 2016 in support of the Application of Debtors for an Order Approving for Employment and Retention of Hays Financial Consulting, LLC as Financial Advisors Effective as of the Petition Date in the Debtor's bankruptcy case (the "**Case**"). Except as otherwise indicated, I have personal knowledge of the matters set forth herein and if called as a witness, would testify competently thereto.[1]

---

[1] Certain of the disclosure herein relate to matters within the knowledge of other professionals at HFC and are based on information provided by them.

ATL 16882581 v4

## **Qualifications Of Professionals**

2. HFC is a professional services firm specializing in providing consulting services to, among other clients, troubled companies, secured creditors and creditors' committees.

3. The Debtors have selected HFC as their Financial Advisor because of the resources offered by HFC and experience on behalf of debtors in chapter 11 cases.

4. In addition to general financial consulting services, HFC has been advised that the Debtors desire to retain them to provide such professional services as HFC, the Debtors and Debtor's other professionals find mutually agreeable, and which will include the following:

(a) Assist the Debtors with the drafting and completion of financial and operational documents, such as schedules and statements of financial affairs and monthly operating reports as required by the bankruptcy court;

(b) Assist the Debtors with all aspects of addressing vendor issues and needs;

(c) Assist the Debtors with all aspects of its financial forecasting and reporting, and interact with all interested parties, especially associated with the Debtor's budget;

(d) Provide advice and assist the Debtors with communication efforts to its employees, vendors, customers, and other stakeholders regarding the Debtor's bankruptcy;

(e) Provide wind-down services post-sale, as needed and requested by the Debtors;

(f) Provide financial, operational, strategic, and bankruptcy-related advice as requested by the Debtors;

ATL 16882581 v4

(g) Assist the Debtor and/or its other professionals with the review and negotiation of offers of interest related to the role of the Debtor's businesses and the anticipated 363 sale process;

(h) Assist the Debtor and/or its other professionals with all other matters as requested and directed by the Debtors;

(i) Provide expert testimony, as required; and

(j) Perform other services incidental and necessary to the Debtor's performance of their duties in these Chapter 11 cases.

5. In performing these services for the Debtors, HFC will not be assuming the role of the Debtors, HFC's role will be advisory only. It is understood that any decision to implement HFC's recommendations or to act on HFC's advice will be solely at the Debtor's discretion. Further, HFC's retention is subject to the acceptance of HFC's General Business Terms. These terms are included as **Exhibit 1** hereto.

## Disinterestedness

6. The terms of employment and compensation set forth below are consistent with employment and compensation arrangements I have entered into in the past and competitive with other financial advisors, accountants, and restructuring consultants with similar clients for the performance of similar services.

7. To the best of my knowledge, HFC is a "disinterested party" within the meaning of 11 U.S.C. § 101(14) and has not had any prior business association with the Debtors, any other creditors, equity security holders of the Debtors or any other parties-in-interest in the Case, or their respective attorneys identified at the present except as follows:

ATL 16882581 v4

(a) HFC was originally engaged by the Debtor as its Financial Advisor effective June 5, 2008. In this capacity, HFC advised the Debtor regarding its financial and operational issues, as well as with the on-going negotiations with its lenders. HFC, or certain of its employees, briefly held the position of Chief Restructuring Officer from January 25, 2010 until February 4, 2010, when that engagement was terminated. HFC reverted back to being the Debtor's Financial Advisor effective February 6, 2010.

(b) HFC has engaged Scroggins & Williamson as legal counsel on numerous occasions in the past and Scroggins & Williamson are currently representing HFC, or certain of its employees, in various matters unrelated to this case.

(c) HFC has been, and is currently, engaged by clients of Parker, Hudson, Rainer & Dobbs on matters unrelated to this case.

8. To the best of my knowledge, information, and belief, HFC has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, this Case. If HFC's proposed retention by the Debtors is approved by this Court, HFC will not accept any engagement or perform any services for any entity or person other than the Debtors in this Case. HFC will, however, continue to provide professional services to entities or persons that may be parties-in-interest in this Case, provided that such services do not relate to, or have any direct connection with this Case.

9. To the best of my knowledge, information, and belief, HFC does not have or represent any interest materially adverse to the interest of the Debtors, or any class of creditors of the Debtors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or any investment banker for any securities of the Debtors, or for any reason except as noted in Paragraph 7 above. Also, to the best of my knowledge, information and belief, HFC

does not have anything but a professional relationship with the United States Trustee and any person employed in the offices of the United States Trustee. S. Gregory Hays serves on the Chapter 7 panel of trustees established by the U.S. Trustee.

10. Based on a conflicts search and to the best of my knowledge, I am not aware of any connections between HFC and the Debtor's creditors, parties in interest in these cases, the United States Trustee or anyone employed by the Office of the United States Trustee, except that HFC may be currently employed by creditors of the Debtor or other interested parties for consulting services unrelated to this bankruptcy matter.

### Professional Compensation

11. HFC's requested compensation for professional services rendered to the Debtors shall be as follows:

   a. A weekly fixed fee of $5,000.00 which will cover all of HFC's time and expenses on the Debtor's behalf each week.

   b. Expenses will be charged at actual costs incurred (and will include charges for copying, typing, telephone, transportation, etc.). HFC will bill (a) if approved by the Debtor, out-of-pocket legal fees[2] and expenses incurred by HFC related to and as a result of this Case (including but not limited to legal services, rendered in connection with the retention of HFC or the presentation and prosecution of any interim or final fee applications or requests for payment of administrative expenses).

   c. HFC will bill entitled to a success fee equal to 1% of the gross value of any completed restructure and/or sale of assets, whether facilitated via a foreclosure, bankruptcy or similar proceeding. This amount should be due and payable at the closing of said event.

12. HFC understands that, in accordance with the Bankruptcy Code, final payment and all interim payments are subject to approval by the Court. All sums received shall

---

[2] To the extent that during the pendency of these cases HFC seeks reimbursement for attorneys' fees from the Debtors, the invoices and supporting time records from such attorneys shall be included in HFC's own application (interim or final, as the case may be) and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy Code.

*ATL 16882581 v4*

be credited against the amount ultimately allowed HFC upon the filing by HFC of an appropriate application for allowance of compensation and reimbursement of expenses.

13. In connection with our retention by the Debtors prior to their filing of a bankruptcy petition, HFC received compensation amounting to $117,012.00. Prior to the petition date, HFC was owed $95,736.95, which it agreed to forego in anticipation of serving the Debtor post-petition. Subject to the approval of this Court, the source of all compensation for professional services to be rendered on behalf of the Debtors shall be from the funds of the Debtor's estate.

14. No agreement exists between HFC and any other person (other than employees and shareholders of HFC) for the sharing of compensation to be received by HFC in connection with services rendered in this Case.

Sworn and subscribed to before me
this 16 day of Feb, 2010.

_____
Notary Public

Notary Public, DeKalb County, Georgia
My Commission Expires May 30, 2011

_____
Christopher J. Tierney, CFE
Managing Director
Hays Financial Consulting, LLC

ATL 16882581 v4

**Exhibit 1**

GENERAL TERMS AND CONDITIONS OF ENGAGEMENT

Fees: The time for which you will be charged is based on one-tenth hour (6 minute) increments, and will include, but will not necessarily be limited to, telephone and office conferences with you, the Borrower, counsel, consultants, government personnel and others; conferences among personnel of HFC; factual investigation; research, preparation, and review of letters, memoranda, projections, forecasts, summaries, and other documents; reviewing files in preparation for proceedings or meetings; responding to your requests to provide information to auditors and other third parties; responding to your requests to provide other information, such as non-standard billing information or information required by your procurement practices, third parties or parent organizations; travel time that would otherwise be available for productive work on regular business days, but which cannot be so devoted because of the circumstances of travel and all time spent related to the Engagement.

Expenses: In addition to fees, HFC bills will include allocable charges for reasonable costs and expenses incurred in performing services by HFC, such as photocopying, mail, messenger and delivery services, computer research, travel (including mileage, parking, air or rail fare, lodging, meals, taxi or car rental), telephone, facsimile or data transmission, secretarial and support staff overtime (when necessitated by your work). Large or abnormal expenses will be agreed upon as to primary responsibility for payment before being incurred.

Estimates: Although HFC may from time to time respond to a request by you for an estimate of the fees and/or expenses that will be involved in the Engagement or a portion thereof, these estimates are inherently inexact and are subject to unforeseen contingencies and changed circumstances, and HFC cannot be bound by such estimates except to the extent expressly set forth in writing.

Bill: The policy of HFC is to render bills to you monthly. Statements generally will be prepared and mailed to you during the month following the month in which services are rendered. Our invoice will show that we have drawn down your retainer by the amount of the invoice and will be invoicing you for the amount needed to re-balance the retainer. HFC assumes that you will pay statements within 30 days. **HFC reserves the right to defer providing services or to discontinue representation of the client if billed amounts are not paid when due.** If HFC does not receive the amount of your account balance within 30 days of the applicable invoice date, an additional 1.5% (or the highest amount permissible by law, if less) per month of the amount outstanding may be added to your invoice as a late charge. You will be liable for all attorney and collection fees arising out of efforts by HFC to collect any unpaid balance of your account.

Termination: You have the right at any time to terminate our services and the Engagement upon thirty (30) days written notice to HFC. Such termination shall not, however, relieve you of the obligation to pay for all services already rendered, including work in progress at the time of

ATL 16882581 v4

termination, and to pay for all expenses incurred on your behalf by HFC through the date of termination.

Cooperation: HFC will provide our services to you in accordance with the Engagement Letter to which these terms and conditions are attached and in reliance upon information and guidance provided by you. To enable HFC to provide our services to you effectively, you agree to cooperate fully with HFC in all matters relating to our Engagement and to fully and accurately disclose all facts and documents that may be relevant to the matter or that HFC may otherwise request. You also agree to make yourself or an appropriate representative reasonably available to attend meetings, conferences, hearings and other proceedings as may be necessary. It is understood that you are not relying on HFC for business, investment, or accounting decisions, or to investigate the character or credit of persons with whom you may be dealing, unless otherwise specified in the letter confirming this Engagement.

Withdrawal: HFC reserves the right to withdraw from the Engagement upon written notice to you if, among other things, you fail to honor the terms of the Engagement Letter, you fail to cooperate or follow the advice of HFC as to a material matter, or any fact or circumstance would render the continued relationship unlawful or unethical or would otherwise authorize such termination. If HFC elects to withdraw, you agree to take all steps necessary to free HFC of any obligation to perform further including the execution of any documents necessary to perfect withdrawal by HFC, and HFC will be entitled to be paid for all services rendered and costs or expenses incurred on your behalf through the withdrawal. Upon completion of the matter to which this Engagement applies, or upon earlier termination of our relationship, our relationship will end unless HFC and you have expressly agreed in writing to a continuation with respect to other matters.

Conflicts: HFC has represented, and continues to represent, many different corporate and individual clients with various business interests in numerous industries. It is possible that, during the time that HFC is engaged in the current matter for which we have been engaged, you may become involved in transactions or disputes in which your interests are adverse to those of one of HFC's present or future clients. If such a conflict were to arise between your interests and those of another present or future client of HFC, HFC will apprise you of that fact, but reserves the right to represent the interests of the other client with respect to the particular matter. In addition, if during the Engagement, HFC in its fiduciary capacity may be required to act against your interest, you hereby acknowledge that possibility, consent to such conduct, and waive any objection or claim against HFC that you might have or attempt to assert as result of such action by HFC as a fiduciary.

Waiver: Therefore, as a condition of the acceptance by HFC of this Engagement, you understand and agree that HFC may continue to represent, or may undertake in the future to represent, existing or new clients in any matter not entailing active involvement that is not substantially related to the matter HFC is handling on your behalf, even if the interests of such other clients in those other matters are directly adverse to yours, and even if those other matters ripen into or involve conflicts between such other clients and you. HFC agrees, however, that your prospective agreement and consent to such conflicting representation shall not apply in any

ATL 16882581 v4

instance where, as the result of HFC's Engagement by you, HFC has obtained sensitive, proprietary or other confidential information of a non-public nature that, if known to any such other client, could be used to the material disadvantage of your interests in the matter involved.

Arbitration:  Although HFC looks forward to a mutually enjoyable relationship, the Parties mutually agree that, in order to avoid litigation in the event of any dispute concerning any services rendered or billing or billings submitted by HFC, the dispute shall be submitted to mandatory binding arbitration.  Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association before an arbitrator or arbitrators selected in accordance with those rules.  In the event that arbitration or legal proceedings are instituted between the Parties, the prevailing Party shall be entitled to an allowance of reasonable attorney fees and other costs incurred as a result of the action or proceeding.  The decision of the arbitrator(s) shall be final and binding on the Parties.  Judgment on any arbitration award may be entered in accordance with either the Federal or Georgia Rules of Civil Procedure.

Assignment:  The obligations, rights, and duties of the Parties to the Engagement may not be assigned, transferred, or delegated without the prior, written consent, upon full disclosure and request, of the other party to the Engagement.

E-Mail:  HFC would be pleased to communicate with you by e-mail.  Unless you indicate to HFC to the contrary, HFC will assume that you consent to such a means of communication.  However, please remember that internet e-mail is not secure and you should avoid sending sensitive or confidential internet e-mail messages unless they are adequately encrypted.

Consent:  Your agreement to this Engagement constitutes your acceptance of the foregoing terms and conditions.  If any of the terms contained herein are unacceptable to you, please advise HFC now so that the Parties can resolve any differences and proceed with a clear understanding of our relationship.

ATL 16882581 v4